IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUANITA A. WEBSTER, | CIVIL DIVISION |
| Plaintiff, | Docket No.: 2:25-cv-00181-RJC |
| vs. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | JURY TRIAL DEMANDED |
| Defendant. | |

## AMENDED COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Juanita A. Webster, by and through her attorneys, Christopher M. Halesey, Esquire, and Woomer & Talarico, and complains and alleges as follows:

1. Plaintiff, Juanita A. Webster (hereinafter "Plaintiff"), is an adult individual residing in Allegheny County, Pennsylvania.

2. Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "Defendant"), is an Illinois insurance business corporation with a registered office address located at One State Farm Plaza, Bloomington, McLean County, Illinois 61710.

3. At all times relevant and material hereto, Defendant was authorized to sell insurance in the Commonwealth of Pennsylvania and regularly conducted business in Allegheny County, Pennsylvania.

4. At all times relevant and material hereto, Defendant acted by and through its agents, servants, employees, representatives, assignees, and/or subsidiaries.

5. The events complained of herein stem from an underlying motor vehicle collision that occurred on November 24, 2020.

6. On the aforementioned date, Plaintiff was lawfully and carefully operating her 2008 Pontiac Solstice (VIN # 1G2MC35B38Y127668) (hereinafter "Plaintiff's vehicle").

7. On the aforementioned date, Stella J. Allen (hereinafter the "Tortfeasor") was operating a 2016 Honda CR-V (VIN # 5J6RM4H34GL132793).

8. At approximately 3:00 p.m. on the aforementioned date, Plaintiff was lawfully parked in the curbside pick-up area located in the parking lot outside of Best Buy, at or near 200 Mall Circle Drive, Monroeville, Allegheny County, Pennsylvania 15146.

9. On that same date and time, the Tortfeasor was also operating her vehicle at or near the same location.

10. Suddenly, and without warning, the Tortfeasor backed her vehicle into Plaintiff's parked vehicle, such that the rear trunk of the Tortfeasor's vehicle collided violently with the rear trunk area of Plaintiff's vehicle.

11. The collision was caused by the negligence of the Tortfeasor generally and particularly in failing to maintain a sharp lookout of the surrounding traffic conditions, failing to maintain proper control of her vehicle, and failing to avoid hitting Plaintiff's vehicle when she saw, or should have seen, Plaintiff's vehicle parked in full view of the Tortfeasor, among other acts of negligence.

12. As a direct and proximate result of the aforementioned collision, Plaintiff sustained the following injuries, some or all of which may be permanent in nature:

    a) Concussion;

    b) Post-concussion syndrome accompanied by chronic headaches;

    c) Internal derangement of both knees, requiring surgical intervention;

    d) Patellofemoral arthralgia of both knees, requiring surgical intervention;

 e)   Cervical radiculopathy accompanied by numbness in the arm and hand;

 f)   Rotator cuff impingement syndrome of the right shoulder;

 g)   Bilateral cervical muscle pain with radiation into bilateral upper traps and shoulders;

 h)   Bruises, contusions, and other injuries in or about nerves, muscles, bones, tendons, ligaments, tissues, and vessels of the body; and,

 i)   Nervousness, emotional tension, anxiety, and depression.

13. As a direct and proximate result of the aforementioned collision, Plaintiff has suffered the following damages, some or all or which may be permanent or ongoing:

 a)   She underwent extensive physical therapy;

 b)   She has had multiple corticosteroid injections into both knees;

 c)   She has had Botox injections for headaches;

 d)   She has undergone multiple bilateral knee replacement surgeries;

 e)   Great pain, suffering, inconvenience, embarrassment, mental anguish, and emotional and physical trauma;

 f)   Plaintiff, or those entities on her behalf, will be required to expend large sums of money for medical treatment and care, hospitalization, medical supplies, surgical appliances, rehabilitation, and therapeutic treatment, medicines, and other attendant services;

 g)   Lost earnings, and Plaintiff's earning capacity has been reduced and may be permanently impaired;

 h)   Inability to enjoy the various pleasures of life that were previously enjoyed;

 i)   Plaintiff has endured painful and/or inconvenient medical treatment for her injuries;

 j)   Inability to enjoy the various pleasures of life that were previously enjoyed; and,

 k)   Loss and impairment of general health, strength, and vitality.

14. At all times relevant and material hereto, the vehicle operated by the Tortfeasor was insured by a policy of insurance through Geico Advantage Insurance Company (Policy # 4560-66-82-89) (hereinafter "Geico policy"), which provided bodily injury liability limits of one hundred thousand dollars ($100,000.00) for any one person injured as a result of her negligence in any one motor vehicle accident.

15. There were no other policies of insurance providing coverage for losses caused by the Tortfeasor which were applicable to the underlying motor vehicle collision.

16. At all times relevant and material hereto, the vehicle that Plaintiff was operating was insured by a policy of insurance through Defendant, State Farm Mutual Automobile Insurance Company (Policy # 1203747-C28-38Q) (hereinafter "State Farm policy"), which provided Underinsured Motorist ("UIM") coverage in the amount of one hundred thousand dollars ($100,000.00) per person, and three hundred thousand dollars ($300,000.00) per accident.

17. At all times relevant and material hereto, Plaintiff paid premiums on her State Farm policy through Defendant specifically for UIM coverage, among other coverages.

18. The bodily injury limits of the Tortfeasor's Geico policy, in the amount of one hundred thousand dollars ($100,000.00), were tendered with the Defendant's consent and waiver of subrogation.

19. By letter dated May 11, 2022, counsel for Plaintiff advised Jennifer Bubenik, claims representative for Defendant, that Plaintiff was pursuing benefits under her State Farm policy's UIM coverage as her injuries and damages exceeded the policy limits of the Tortfeasor's policy.

20. On January 9, 2024, counsel for Plaintiff emailed Lauren Paez, a claims specialist for Defendant, demanding the policy limits of Plaintiff's UIM coverage based on Plaintiff's injuries to date. Within this email, Defendant was provided with a demand package containing the relevant medical and billing records, photographs, Plaintiff's personal injury protection ("PIP") file, and the November 24, 2020 police report.

21. It should be noted that within the relevant medical records provided to Defendant, Dr. Edward Snell noted during a June 23, 2021 office visit that both of Plaintiff's knees hit the dashboard during the November 24, 2020 motor vehicle collision, which resulted in her bilateral knee pain that required cortisone injections. Furthermore, during an office visit with Dr. Nicholas Sotereanos on July 7, 2022, Plaintiff was noted to have failed this conservative treatment (the injections) and has elected to undergo surgical intervention for her right knee. Plaintiff underwent a total right knee arthroplasty which happened on September 14, 2022 with Dr. Sotereanos. Similarly, at an office visit dated November 10, 2022, Dr. Sotereanos noted that Plaintiff eventually failed conservative treatment for her left knee as well, and has elected for a total left knee arthroplasty which happened on March 27, 2023.

22. As such, the relevant medical records clearly demonstrate causation—that Plaintiff's two knee surgeries were related to the underlying motor vehicle collision and the knee injuries sustained on November 24, 2020.

23. By letter dated January 11, 2024, Ms. Paez acknowledged Plaintiff's demand letter.

24. By letter dated February 9, 2024, Ms. Paez confirmed her review of the enclosed documentation, noting that additional information would be necessary to complete her evaluation of Plaintiff's claim. Additionally, Ms. Paez stated that she would like to have an examination under oath ("EUO") of Plaintiff, and an evaluation performed, and referred the claim to Defendant's counsel.

25. By letter dated February 28, 2024, counsel for Defendant requested dates to schedule Plaintiff's EUO. Counsel for Defendant also requested information on the third-party settlement and bodily injury coverage available, in addition to the initial demand package.

26. On June 26, 2024, Plaintiff underwent the EUO, in accordance with Defendant's request.

27. By letter dated July 8, 2024, following Plaintiff's EUO, counsel for Defendant requested from Plaintiff's counsel copies of updated medical records reflecting subsequent surgeries relative to the injuries Plaintiff sustained in the November 11, 2024 collision. Counsel for Defendant also inexplicably requested documents relating to the repair estimates of Plaintiff's vehicle, with additional photographs.

28. By letter dated September 9, 2024, counsel for Defendant followed up with Plaintiff's counsel on the requested documents related to Plaintiff's vehicular damage.

29. On November 1, 2024, counsel for Plaintiff provided Defendant's counsel with a vehicle damages estimation report, complying with the request (although unnecessary to evaluate Plaintiff's injury), and once again asking for Defendant's offer to the Plaintiff's initial demand letter from January 9, 2024.

30. By letter dated November 25, 2024, counsel for Defendant requested additional medical records from Plaintiff's counsel relating to Plaintiff's third knee surgery on October 9, 2024, and asking Plaintiff to purchase those records.

31. On November 25, 2024, counsel for Plaintiff responded to Defendant's counsel, explaining how Plaintiff's first two knee replacement surgeries would be sufficient to tender the available UIM policy limits, as the initial demand was made on January 9, 2024, and requesting records from her third knee surgery would continue to unreasonably delay Plaintiff's UIM payments because Defendant already had sufficient information to evaluate the policy limits claim nearly 11 months prior.

32. By letter dated December 2, 2024, counsel for Defendant explained to Plaintiff's counsel that her demand could not be met without further investigation into Plaintiff's most recent surgical records. Counsel for Defendant also noted that Defendant may soon request an independent medical examination (IME) of Plaintiff.

33. To date, nearly one year later, Defendant has not offered any payment of Plaintiff's available UIM benefits under her State Farm policy, despite having more than enough time and evidence to do so.

34. To date, Defendant has not provided an adequate explanation as to why the policy has not been tendered despite multiple requests.

## COUNT I
### *Plaintiff v. Defendant*
### Breach of Contract
### Underinsured Motorist Benefits

35. Plaintiff incorporates, by reference, all preceding paragraphs as if set forth at length herein.

36. The Tortfeasor was at fault for the accident, and the damages sustained by Plaintiff are in excess of the policy limits available under the Tortfeasor's Geico policy of insurance.

37. As stated above, at the time of the collision, the Tortfeasor was driving a vehicle which was insured under a policy of insurance that provided one hundred thousand dollars ($100,000.00) in liability insurance coverage for any one person injured as a result of an insured's negligence in any one accident.

38. The Tortfeasor's Geico policy is insufficient to make Plaintiff whole for her past, present, and future economic and non-economic damages.

39. It is averred, upon information and belief, that the Tortfeasor has insufficient assets in which to pay any potential judgment in excess of the policy limits of the Geico policy, and he was, as defined as an "underinsured motorist" for purposes of the Pennsylvania Motor Vehicle Financial Responsibility Law and the Tortfeasor's policy of insurance.

40. As noted previously, Plaintiff was insured under her State Farm policy, a separate policy of insurance from the Tortfeasor.

41. Plaintiff's State Farm policy through Defendant contained UIM coverage. Plaintiff's State Farm policy of insurance contained a policy limit of one hundred thousand dollars ($100,000.00), in the event an insured under the policy sustained injuries, damages, and losses in excess of liability limits of the responsible party.

42. The amount of money available to Plaintiff from the Geico policy on behalf of the Tortfeasor is insufficient to compensate Plaintiff for the injuries, damages, and losses incurred and to be incurred in the future by Plaintiff.

43. Plaintiff is entitled to recover additional amounts from Defendant pursuant to the State Farm policy, under which she is a listed and insured driver.

44. Plaintiff has complied with all duties and requirements set forth in the State Farm policy of insurance or required by Pennsylvania law to collect full compensation from Defendant.

45. Defendant has breached its contractual obligations to Plaintiff by failing to compensate Plaintiff for her significant injuries by unreasonably delaying the tender of UIM benefits under her State Farm policy.

46. At all times relevant and material hereto, Defendant had a duty to act in good faith and deal fairly with Plaintiff.

47. Defendant breached its contractual obligations and its duty to act in good faith and deal fairly with Plaintiff in the following manner:

    a) Failing to make a reasonable, fair, and timely evaluation of the Plaintiff's claim in an attempt to unreasonably delay payment on the Plaintiff's claim;

    b) Failing to follow its own internal procedures, rules, regulations, directives, and claim handling practices while evaluating Plaintiff's claim;

    c) Applying inconsistent and/or different standards to Plaintiff's claim than those applied to other claims of a similar nature submitted to Defendant in an effort to deny Plaintiff fair and adequate compensation for her injuries, damages, and losses;

    d) Dismissing and ignoring all evidence which supported Plaintiff's claim for remuneration and coverage, while at the same time conducting minimal independent investigation of its own which might develop any evidence to refute Plaintiff's claims;

e) Failing to pay benefits to Plaintiff that were due and owed with no reasonable basis for doing so;

f) Failing to effectuate a prompt and fair settlement of Plaintiff's Underinsured Motorist claim;

g) In unreasonably delaying the tender of available UIM benefits by needlessly requesting superfluous information and documentation beyond what is necessary to accurately evaluate Plaintiff's claim;

h) Breaching the implied covenant of good faith and fair dealing; and,

i) Accepting premiums for Underinsured Motorist coverage while, at the same time, refusing to pay a reasonable and fair amount of Underinsured Motorist benefits to the Plaintiff, in violation of Pennsylvania law.

WHEREFORE, Plaintiff requests judgment for damages against Defendant in an amount of the one hundred thousand dollars ($100,000.00) of the underlying insurance policy and any further relief as this Honorable Court may deem just and equitable.

**A JURY TRIAL IS DEMANDED.**

Woomer & Talarico

_____
Christopher M. Halesey, Esquire
PA I.D. # 322900
Attorney for Plaintiff

Three Parkway Center, Suite 300
Pittsburgh, PA 15220
Tele # (412) 388-0848

## CERTIFICATE OF SERVICE

I hereby certify that on this __11th__ day of __March__, 2025, a true and correct copy of the foregoing *Amended Complaint in Civil Action* was served by First-Class U.S. Mail, postage prepaid, or alternatively via e-mail, upon the following:

Mark A. Martini, Esq.
Kevin D. Huber, Esq.
Robb Leonard Mulvihill LLP
BNY Mellon Center
500 Grant St, Ste 2300
Pittsburgh, PA 15219
**Attorneys for: State Farm Mutual Automobile Insurance Company**

Woomer & Talarico

BY: _____
Christopher M. Halesey, Esquire
Attorney for Plaintiff
PA I.D. #: 322900

Three Parkway Center, Suite 300
Pittsburgh, PA 15220
Tele # (412) 388-0848

## VERIFICATION

I, Juanita A. Webster, being duly sworn according to law, depose and say that the facts contained in the foregoing *Amended Complaint in Civil Action* are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

*/s/ Juanita Webster (Mar 11, 2025 16:08 EDT)*
Juanita A. Webster